**DONOVAN, Plaintiff-Appellee v. INDUSTRIAL COMMISSION, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1805. Decided June 20, 1944.

Jacobson & Durst, Dayton, Ohio, Attorneys for Plaintiff-Appellee.

Thomas J. Herbert, Attorney General, Albertus B. Conn, Assistant Atty. General, Columbus, Attorneys for Defendant-Appellant.

## OPINION

BY THE COURT:

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

Plaintiff's petition was filed May 18, 1943 and thereby she sought a judgment giving her the right to participate in the insurance fund as the widow and sole dependent of her deceased husband, Daniel W. Donovan who died October 15, 1941. It is further alleged in the petition that on the 2nd day of October, 1941, the said Daniel W. Donovan was an employee of Montgomery County, Ohio, under a contract of hire and that then and there while in the course of said employment with said employer he was injured while lifting a plank and that said injuries and subsequent death arose out of said employment and in the course of the employment. The petition also contained the allegations that at all times named the county had in its employ and in its business regularly three or more workmen in contract of hire and that said County of Montgomery was a contributor to the said insurance fund under the management and control of the defendant, The Industrial Commission of Ohio.

Defendant's answer admitted that on October 2, 1941, Daniel W. Donovan, the husband of plaintiff, was in the em-

ploy of Montgomery County; that said employer had complied with the provisions of the Workmen's Compensation Act by paying premiums into the state insurance fund; that the said Daniel W. Donovan died on or about October 15, 1941, and that subsequent thereto plaintiff filed with the defendant an application for benefits from the said insurance fund on which proceedings were had as set forth in the petition. The defendant denied each and every allegation contained in said petition except those specifically admitted.

The claim was originally presented on October 27, 1941, by the filing of an application with the Industrial Commission for benefits as the sole beneficiary of the decedent. Upon hearing, the application was denied on the ground that the evidence failed to show that decedent's claimed injuries occurred in the course of his employment or grew out of his employment. An application for rehearing was made and sustained. Under this hearing evidence was taken and a record made. The claim was again denied for the same reason. Thereafter the plaintiff-claimant perfected an appeal to the Court of Common Pleas of Montgomery County.

Therein the jury was waived and the case submitted to one of the local judges upon the transcribed record. It was the order and judgment of the trial court that the evidence supported plaintiff's petition and that she was entitled to participate in the funds as prayed for.

Within the proper time defendant gave notice of appeal on questions of law and thereby lodged the case in our court. Very able and comprehensive briefs have been filed by attorneys representing the respective parties. The defendant introduced no evidence; many objections were made to questions and answers in the presentation of plaintiff's case.

It was stipulated that the trial court should make marginal notations of his conclusions as to all the rulings originally made by referee in the taking of the evidence on rehearing. This stipulation was complied with by the court with one possible exception.

It was agreed by counsel that the ultimate question to be determined is "whether plaintiff proved that decedent sustained the injury on October 2, 1941, in the course of and arising out of his employment."

The following short narrative of facts is essential to a complete understanding of the nature of the controversy.

In 1941 decedent Daniel W. Donovan was sixty years of age and weighed 229 lbs. He had worked for the County of Montgomery at the county garage for considerable time. His health up to August 1, 1941 had been apparently perfect except for sore throat. On August 1, 1941, while attending a night ball game, he fell down a concrete steps, fracturing several ribs and injuring himself severely about the lumbar region of his back. His injuries kept him away from his work until September 29, 1941 when, thinking that it meant his job, he insisted on returning to work though his back condition had not completely healed. During this interim between August 1st and September 29, the decedent suffered excruciating pain in the lumbar region of his back. He was unable to get out of bed or turn himself without help. The evidence is conclusive that decedent was not in fit physical condition to return to work on September 29. The plaintiff, his wife, had to help him out of bed and assist him in dressing before he left the home on that date. In response to a question, the wife stated that she did not know whether or not he had anyone with him in the car when he left home for his work at the county garage.

He worked full time Monday, Tuesday, Wednesday and on Thursday morning until about the middle of the forenoon. His work on these few days was painting flood gates. These gates were about nine feet long and five feet high and were intended for use under bridges and over streams so as to prevent cattle from going under the bridge to the opposite side. The work was being done on the outside near a small building. The gates were originally made by one Fred S. Wolf, who was a carpenter employee of the county. They were constructed inside of a small building where Mr. Wolf had his shop and after construction, were removed to the outside. No one was with or near Mr. Donovan when he was engaged in the work of painting. So far as is shown Mr. Wolf was the only employee in close proximity and he was on the inside of the building giving his attention to his work but from time to time could see Mr. Donovan painting the gates on the outside. About the middle of the forenoon on October 2, Mr. Donovan came into this small building and presented appearance that he was suffering from pain.

Mr. Wolf was the first witness called. The first part of his testimony was preliminary and went in without objection. The record bears evidence that Mr. Wolf was not an easy witness to examine. He was inclined to go off on a tangent and tell things he thought were proper rather than answer questions. Counsel for claimant in his attempt to meet this objectionable method of the witness propounded questions that were leading. Counsel for the Commission preserved his record by objecting to the questions and also moving to strike out answers that were objectionable, because not responsive. Whenever and wherever the referee sustained an objection, counsel for appellee preserved his record by making proffer. The trial court sustained the referee in his early rulings.

The competency of this evidence is very important since, in our judgment, the entire case hinges on whether or not any of the answers of Mr. Wolf as to what was said by Mr. Donovan was competent under the rule of res gestae. Under this situation it is appropriate to quote certain questions propounded to Mr. Wolf and his answers.

First is question 5:

"5. Mr. Wolf, on the morning of October 2, 1941 I will ask you whether or not he came into your place of employment in pain?"

Mr. Patterson, attorney for the Commission objected and the Referee sustained the objection. The trial court held that the ruling was proper. We have no difficulty in determining that the question was improper for the reason that it asks for a conclusion of the witness rather than give facts from which the ultimate question could be determined. Furthermore, there can be no claimed error for the reason that counsel made no proffer after the question was objected to and sustained.

Question 6:

"6. I will ask you whether or not on the morning of October 2, 1941, you noticed anything unusual about him.

MR. PATTERSON: Objection

REFEREE: Overruled

MR. PATTERSON: Exception

A. Yes, he came into my shop.

7.   Will you describe his condition when he came into your shop?

MR. PATTERSON: Objection

REFEREE: Overruled

MR. PATTERSON: Exception

A.   He came into my shop in the morning sometime and he said he hurt his back and I was busy working and there for a second or so I didn't pay any attention to him and then he began to complain and I looked up at him and I said 'Sit down there Dan and rest yourself' and so he sat down and then I looked up at him and in my judgment the man was sick and I looked at him and his eyes looked glassy, and I says to him, I says 'Dan, why don't you go home?'

MR. PATTERSON: Move to strike entire answer.

REFEREE: Motion to strike is granted."

The trial court held that this ruling was proper. It is obvious that very little, if any, of this answer was responsive to the question. There is a rule of law that courts, in Industrial Commission cases, will not always adhere to strict rules of evidence. Largely this is due to the fact that when the record is once made up, there is no possibility of changing or correcting it through a new trial. Furthermore there are provisions in the act providing for technicalities. We are not prepared to say that the referee and trial court were in error on the ruling on this question. We are quite sure that counsel for plaintiff recognize the objectionable features in the answer. The next question was wholly a repetition of the former.

"I want you, Mr. Wolf, to describe his condition when he came into your place as you saw it—just what did you notice about his physical appearance that attracted your attention.

MR. PATTERSON: Objection

REFEREE: Overruled

MR. PATTERSON: Exception.

A.   Why he looked to me like he was in pain of some kind. His eyes were glassy and he looked sick to me.

MR. PATTERSON: Move to strike that answer.

REFEREE: That portion which says 'his eyes were glassy' may remain and the rest may be stricken.

MR. PATTERSON: Exception."

The trial court determined that the fereree's ruling was proper.

"Q. About how long was he in your building or your shanty—is it a shanty, Mr. Donovan?

A. It is a little building.

Q. How long was he in that building?

A. I judge twenty minutes or a half hour.

Q. Did his condition change during that time?

A. Yes.

Q. And finally at the end of the time what did he do or what became of him?

A. He went out.

Q. When you saw him and you mentioned that his eyes were in this glassy condition, what if anything did he say to you at that time during the period that you noticed his eyes in that glassy condition?

MR. PATTERSON: Objection

REFEREE: Sustained

MR. JACOBSON: Exception and proffer.

A. Well, right the first time that I noticed him he didn't say anything to me, but as time went on he complained about his back, and to my judgment the man was getting worse—his eyes were getting more glassy.

MR. PATTERSON: Let the record show a motion to strike the answer in the event of an adverse ruling."

The trial court determined that the question and answer were admissible and we concur in the ruling.

"Q. What did he say to you during that time that his eyes were in this glassy condition as to what had happened?

MR. PATTERSON: Objection

REFEREE: Sustained

MR. JACOBSON: Exception and proffer.

A. He said he had done some lifting and he hurt his back."

The trial court determined that this question and the answer were admissible. This question and the answer is not admissible unless it comes within the rule of res gestae. This rule

is an exception to the general rule which holds that self-serving declarations are not admissible. Plaintiff's case must stand or fall upon the admissibility of this question and answer together with probative force. This legal proposition will be discussed later.

The next question:

Q. "Now you said a moment ago—you expressed an opinion as to him having some pain in his back. What I want to know is what did you see about him at that time that showed he was having pain in the back?

MR. PATTERSON: Objection

REFEREE: Overruled

MR. PATTERSON: Exception"

The trial court sustained the ruling of the Referee.

"A. Well, the man sat kind of sideways and as I say his eyes were glassy and he looked kind of pale—something was the matter with him—of course I didn't know.

MR. PATTERSON: Motion to strike

REFEREE: Motion denied

MR. PATTERSON: Exception"

The trial court sustained the ruling of the Referee.

"Q. About what time in the morning did this incident occur that you have just described?

A. Well, I couldn't remember that—sometime during the middle of the morning, sometime.

Q. Do you know about what time Mr. Donovan's work started there in the morning?

A. Half past seven.

MR. PATTERSON: No cross examination at this time. I would like to reserve the right to call this witness for cross examination at a later time if I so desire."

Mr. Wolf was not interrogated any further. The next witness was Jeanne Monjar. Miss Monjar was the Assistant Record Librarian at the Good Samaritan Hospital. She introduced

the hospital records relative to Mr. Donovan. The records were admitted, but over the objection of Mr. Patterson. Referee sustained the objection. Mr. Jacobson excepted and proffered the exhibits which are attached to the Bill of Exceptions. The trial court held that the ruling was proper. We might say that the record discloses that Mr. Donovan was admitted to the hospital on October 7, 1941 and remained there until he died on October 15. After the Referee's ruling rejecting the hospital records, counsel for claimant made this further inquiry of Miss Monjar:

"Q. How are these records made—just what is the procedure—can you tell us.

A. Why yes—the Doctor writes the history and the physical—he writes the history according to the patient and the physical according to his own observation and then I think they had a consultation there and then his autopsy is there—that was done by the pathologist and the nurses' notes are kept by the nurses.

MR. JACOBSON: I will offer them again in evidence as Claimant's Exhibit "A".

MR PATTERSON: Objection

REFEREE: Sustained"

The trial court determined that this evidence was admissible. This hospital record did contain statements narrating that Mr. Donovan was lifting a plank and hurt his back. This evidence would not be admissible as having any probative force as to how the claimed accident occurred. In a limited way it possibly was admissible as showing Mr. Donovan's admission to the hospital, the date, his condition, the date of his death and the fact of an autopsy.

At this stage of the proceedings, Mr. Jacobson, attorney for the claimant, proffered in evidence the death certificate. Mr. Patterson objected to its introduction and the objection was sustained. Mr. Jacobson excepted and proffered the Exhibit. The trial court held that the ruling was correct. We would find no prejudicial error in this ruling. Next, counsel for appellee offered in evidence, marked Claimant's Exhibit C for identification, Form C-71, Part 1, containing the application of the claimant for compensation and received by the Industrial Commission on October 27, 1941. Mr. Patterson ob-

jected and the Referee sustained the objection. In connection therewith counsel for appellee also offered Part 2 of the same application, being the attending physician's report. Mr. Patterson objected and the Referee sustained the objection. Counsel for appellant then offered as Exhibit E, Part 3 of the same application being the report of the employer, certified to by Victor C. Smith, County Engineer of Montgomery County, Ohio. This evidence was objected to and sustained by the Referee. The marginal notes indicate that the trial court determined that all three Exhibits were admissible. In the written opinion of the trial court it is indicated that he determined that the first two were not admissible but that the third part which was signed by the employer was admissible.

It is our judgment that neither of these exhibits was admissible. The three exhibits were in fact one paper in three parts. It was the form originally used for the injured person in presenting his claim. The first part purported to be the statement of Mr. Donovan but it was unsigned and furthermore was not filed until October 27, 1941, almost two weeks after his death. The second part, purporting to be a report of the attending physician disclosed on its face that certain parts were filled out after the death of Mr. Donovan. The third part was not dated and nothing in the contents would disclose as to when it was actually made out.

However, the three parts were one document and being filed after the death of Mr. Donovan could have no probative force in support of Mrs. Donovan's application filed on the same day.

The next exhibit introduced by counsel for plaintiff-appellee was Exhibit F which was the present plaintiff's preliminary application, also referred to as first notice of the death of Daniel W. Donovan. This was filed October 27, 1941, on printed form C-2, generally used by claimants in presenting death claims. Counsel for the Commission objected to its admission and the Referee sustained the objection. The trial court held that this application was admissible. We have no hesitancy in determining that it could have no probative force on the questions as to whether or not Mr. Donovan received an injury on October 2 in the course of and growing out of his employment. This document is very similar to a petition

filed by plaintiff wherein is set up the factual questions as a basis for recovery. This application was signed by Mrs. Donovan and while there are positive statements therein as to Mr. Donovan receiving the injury in the course of his employment and while the application standing alone would not indicate the source of her information yet it appears from the record that when she was called as a witness it is demonstrated that she knew nothing about the claimed accident except what was told her. We think the trial court was in error in admitting this application in evidence since it could have no probative force on the question at issue. However, the admission would not be necessarily prejudicial if its probative force is restricted to the proper limits.

Counsel for plaintiff then offered Exhibit G which was a signed certificate of the employer answering numerous questions on the printed blank furnished by the Commission. This certificate was dated March 16, 1942 and was signed by Victor C. Smith. It was made out on form C-6. Mr. Patterson objected to the introduction and the objection was sustained by the Referee. The trial court held that this evidence was admissible. This exhibit in substance states that Daniel W. Donovan on October 2, 1941, sustained a sprained back while lifting a plank 8 x 12. Certificates of this character are held by the courts to be admissible but having no evidentiary value, it would appear that the certificate was based solely upon self-serving declarations contained in the application. We refer to the case of **Coutellier et al v Industrial Commission of Ohio, 126 Oh St 546,** Syllabus 2. This syllabus very clearly and pertinently limits the probative force of a certificate of the employer as above indicated. Our Court in the case of **Industrial Commission v Grecht, 17 Abs 645,** had occasion to consider the admissibility of a certificate of an employer attesting the truth of statements in an employee's application for compensation. In the case just cited the employer had made the statement that he did not see the employee sustain the injury. There was no attempt to question the employer to determine if he had other additional knowledge upon which he based such certificate. By reason of this fact we held that the certificate was not inadmissible merely because the employer had stated therein that he did not see the accident. In the instant case the situation is somewhat different. Question 5 is as follows:

"5. Names and addresses of witnesses to accident.
A. None—See statement of Fred S. Wolf."

When Mr. Smith, the County Engineer makes the statement in his certificate that there were no witnesses to the accident, it is necessarily inferred that the earlier answers are based on hearsay evidence hence are not admissible.

The further statement in the answer to question 5 "See statement of Fred S. Wolf" might indicate that Mr. Smith was basing his answers on what was told him by Mr. Wolf. No separate statements from Mr. Wolf are attached to the certificate. However, as heretofore indicated Mr. Wolf was called as a witness for the plaintiff and gave full testimony under oath. We have heretofore quoted his testimony in full.. If Mr. Wolf's testimony as to what was stated to him by Mr. Donovan was competent under the rule of res gestae, then it would be immaterial whether or not the certificate of Mr. Smith was admitted in evidence. In any event it would not be prejudicial. Its probative force is limited as above indicated.

The next witness called was Pearl E. Donovan, widow and sole dependent of Mr. Donovan. Much of the testimony of this witness related to Mr. Donovan's severe injury when he fell at the ball park on August 1, 1941. It is undeniably shown that following this fall at the ball park on August 1, 1941, Mr. Donovan suffered excruciating pain in his back. The widow also testified that he was not fit physically to go back to work when he did so on September 29. Even at that time he was unable to get out of bed without help. As to what happened at the County Garage she knows nothing except what was told her. She described his extreme suffering but so far as we can see it did not differ in kind from what he had previously suffered before going back to work. We find nothing in the testimony of this witness that has any probative force upon the vital question as to whether or not Mr. Donovan suffered an accidental injury at the County Garage on October 2, 1941.

The next witness called was Dr. L. E. Gough, a practicing physician located on Troy Street, Dayton, Ohio. At the time his testimony was taken he had been practicing eight years. Late afternoon of October 2, Mr. Donovan called at the office of Dr. Gough. The Doctor had not treated Mr. Donovan for

his previous injury at the ball park. At the time of the call on October 2, Mr. Donovan was suffering such excruciating pain that no examination was made. The Doctor gave him some medicine to relieve his pain, suggested that he return to his home and the Doctor would see him later. Dr. Gough did see his patient the following day and was the attending physician until the time of his death on October 15. Dr. Gough knows nothing about the claimed accident except what was told him by his patient. The Supreme Court of Ohio in the case of **Coutellier et v Industrial Commission of Ohio, 126 Oh St 546, Syllabus 1,** states that this evidence is not competent unless the statements made by an injured person are under such circumstances as cause them to be a part of res gestae. Statements to the Doctor were unquestionably self-serving declarations and inadmissible. The Doctor testified as to his examination of the person of Mr. Donovan and stated that he found tenderness in the lumbar regions of the back. He ordered an urinalysis and found that he had a low grade of diabetes. Nothing in the Doctor's testimony would be indicative of a recent injury in view of the fact that Mr. Donovan had previously suffered a severe injury in the same location and had not recovered. A hypothetical question was put to Dr. Gough but this question contained the assumption that Mr. Donovan had suffered an accidental injury on the 2nd day of October, 1941. Based on this question as formulated, Dr. Gough stated that there was a casual relation between the claimed accident and the conditions found. During the course of the cross examination of the Doctor, he made the statement that a man with a sprained back could have a second sprain. This, of course, is obvious. The Doctor further testified that Mr. Donovan was ordered to the hospital on October 7, that an x-ray was ordered but the taking of it was delayed because of the extreme suffering of the patient. Later the patient was removed to the x-ray room where pictures were taken. Upon his return to his bed in the hospital he very soon thereafter suffered additional pain, lapsed into unconsciousness and died on October 15.

An autopsy was had and Dr. Gough was present. The findings were "a left iliopsoas muscle abscess which had perforated the spinal column causing a cerebral spinal meningitis —the vertebrae had been involved—pus was in the spinal ca-

nal". Considering the testimony of Dr. Gough in its entirety, we find nothing supporting the claim of an accidental injury on October 2, 1941, independent of statements made to him by the patient.

The next witness was Mrs. Gladys Harvey, a graduate nurse and friend of the family. She was at the home during the month of August following the accident at the ball park and described Mr. Donovan's condition at that time. Her evidence supported the fact that during that period Mr. Donovan was suffering excruciating pain and was unable to move in the bed except with help. So far as is shown from the record, she knew nothing about the claimed accident of October 2 or condition thereafter. No other witnesses were called in the hearing.

After considering the record in its entirety we arrive at the conclusion that there is no proof supporting the claim that Mr. Donovan suffered an injury on October 2, in the course of and growing out of his employment, unless perchance claimed statements made by Mr. Donovan to witness Wolf were competent under the theory of res gestae. Counsel for plaintiff-appellee argues that claimed accidental injuries may be proved by circumstantial evidence as well as by direct evidence.

This is a correct statement of law. However, when applied to the instant case we have the circumstance of a previous injury to Mr. Donovan when he fell at the ball park and further that he was not in condition to go back to work when he returned on September 29. If, on October 2, 1941, Mr. Donovan had not been still suffering from this previous injury but on the contrary was a well man, then the circumstances relating to his physical condition would be supporting evidence of an accidental injury. However, under the record in its entirety the question arises as to whether or not the condition was a flare-up from the original accident of August 1st or was an accelerated condition through an accident on October 2. This at once shows the importance of the very vital question as to whether or not Mr. Wolf's narrative of what was told him by Mr. Donovan is admissible. Counsel for plaintiff-appellee have referred us to the following authorities:

Ind. Com. v Crum, 21 Abs 297

Kellogg v Ind. Com., 27 Abs 411
Ind. Com v Forthman, 51 Oh Ap 389
Ind Com. v Grecht, 17 Abs 645

Counsel for defendant-appellant when this question was res gestae cited comment on the following:

Stough v Ind Com., 142 Oh St 446 (Ohio Bar, Jan. 24, 1944)

The first syllabus of this case reads as follows:

"A declaration or statement, to be admissible as part of the res gestae, is not required to be exactly simultaneous with the primary fact in controversy, but it must be a spontaneous or an impulsive declaration or statement and not the mere narration of a past transaction."

Also 32 Corpus Juris Secundum, 45, Section 417:

"In order for a declaration to be admissible as part of the res gestae, it must be the spontaneous utterance of the mind while under the influence of the transaction or event."

We quote from a decision of the Supreme Court rather than from the opinions in the Abstract for the reason that an applicable decision of the Supreme Court must be accepted by us in preference to the decisions of the Appellate Court. We have read and re-read the opinions cited by counsel for appellee above listed. To comment from each one of the cases would unduly add to the length of this opinion.

Considering all of the authorities that we could find and reading the same in connection with the factual questions in the instant case we are forced to the conclusion that the statements made by Mr. Donovan to witness Wolf were not shown to be under such circumstances as would constitute them a part of res gestae. With this evidence removed, nothing remains.

Since the record cannot be corrected in a rehearing, we have no alternative except to enter final judgment.

Judgment will be entered for the defendant-appellant against the plaintiff-appellee.

Entry may be drawn accordingly.

BARNES, P. J., and GEIGER, J. concur.
HORNBECK, J. concurs in judgment.